UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY SCOTT BROWN,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 1:23-cv-01168-WBS-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO AFFIRM THE COMMISSIONER'S DECISION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 13, 18)** |

**I.     Introduction**

Plaintiff Gary Scott Brown seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits pursuant to Title II of the Social Security Act.[1]

**II.    Factual and Procedural Background**

Plaintiff applied for benefits on November 8, 2019 alleging a disability onset date of December 15, 2014 due to a heart condition, "knees need replacement," high blood pressure, pacemaker, "bone on bone in both knees," and severe pain of the knees.  AR 74–75, 228–29.  The Commissioner denied the applications initially on January 30, 2020, and on reconsideration on June 8, 2020.  AR 93, 100.  Plaintiff appeared for a hearing before an ALJ on July 6, 2022.  AR 48–73.  The ALJ issued an unfavorable decision on July 18, 2022.  AR 26–45.  The Appeals Council denied

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge.  Docs. 9, 10.

1

review on June 7, 2023 (AR 11–16) and this appeal followed.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-

(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged disability onset date of December 15, 2014 through his date last insured of June 30, 2015. AR 32. At step two the ALJ found that Plaintiff had the following severe impairments: 1- obesity; and 2- bilateral knee osteoarthritis and derangement of the medial menisci, status-post arthroscopy and debridement procedures. AR 32. The ALJ also found at step two that Plaintiff had the following non-severe impairments: 1-bilateral hearing loss; 2- essential hypertension; 3- gastroesophageal reflux disorder (GERD); 4- hyperlipidemia; and 5- history of gastric bypass surgery. AR 32.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 33.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c) with the following limitations: frequently push, pull and/or operate foot controls with both lower extremities; frequently stoop, kneel, crouch, or crawl; frequently climb stairs, ramps, ladders, ropes

or scaffolds; and requires a moderate noise work environment.  AR 34–37.

At step four, the ALJ found that Plaintiff could perform his past relevant work as an automobile salesperson and door-to-door sales representative.  AR 38.  The ALJ also made an alternative step five finding in reliance on the Vocational Expert's testimony that Plaintiff could perform the following jobs existing in significant numbers in the national economy: patient transporter, counter supply worker and dietary aid.  AR 38–39.  The ALJ therefore concluded that Plaintiff was not disabled from the alleged onset date of December 15, 2014, through his date last insured of June 30, 2015.  AR 40.

## V.     Issue Presented

Plaintiff asserts one claim of error: "The ALJ's physical RFC determination is not supported by substantial evidence because the ALJ failed to properly develop the record."  MSJ at 3, 13–18 (Doc. 13).

### A.     RFC Generally; Development of the Record

#### 1.     Applicable Law

Before proceeding to steps four and five, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883*.  See also*

20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

"The ALJ has a duty to develop the record … even when the claimant is represented by counsel." *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The duty is triggered where the evidence is ambiguous or inadequate for adjudication. *Id.* "A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy."). *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (as amended)

5

### 2. **Analysis**

Although Plaintiff has asserted a single claim of error, it contains the following contentions: 1- the RFC is unsupported by substantial evidence because the ALJ independently created it from "whole cloth" without guidance from a medical professional; 2- in doing so the ALJ impermissibly played doctor by interpreting "raw medical data" unsusceptible to a layperson's understanding; 3- the record was ambiguous and/or inadequate for adjudication given the findings of the state agency consultants at the initial and reconsideration levels that there was "IE [inadequate evidence] for physical disability evaluation due to no available MER to review in the relevant time frame"; and, 4- that this ambiguity/inadequacy triggered the ALJ's duty to fully develop the record with a consultative examination and/or medical testimony about Plaintiff's functionality during the relevant period. MSJ at 13–18.

Defendant responds generally that the RFC was supported by substantial evidence including the medical evidence and Plaintiff's activities. Defendant further responds that the duty to develop the record was not triggered, and that the ALJ appropriately exercised the authority to review the medical evidence and formulate the RFC which is an administrative finding and not simply the product of a doctor's opinion.

### a. **ALJ's are not Barred from Independently Reviewing Medical Evidence and Translating it into Functional Terms**

The RFC need not mirror any particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3). There is often a significant gap in time between the agency's review at the initial/reconsideration determination levels and the ALJ hearing. Claimants routinely continue pursuing medical care during that time and generating new medical records. *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) (unpublished) (noting there "is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time.").

Thus, an ALJ is nearly always tasked with independently reviewing some medical evidence that was never considered by a medical expert, then forming conclusions about the functional significance of that evidence. That is consistent with the ALJ's role as characterized by the Ninth Circuit. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Here, Plaintiff states that "In short, an ALJ cannot interpret the notations of doctors unguided . . ." (MSJ at 16), however this is not an accurate statement of law for the simple reason that the timeline and sequence of events for administrative review of social security disability claims is such that in many cases the ALJ unavoidably must independently review at least some medical notations/records, which may also contain raw medical data, made subsequent to the initial/reconsideration stage. This is fully consistent with the ALJ's duty as characterized in *Rounds*. Thus, if the mere presence of evidence not previously reviewed by a medical expert at the time of the ALJ hearing were sufficient in itself to create evidentiary ambiguity, the regulations would require the ALJ to obtain a follow up consultative examination in nearly every case. Yet the regulations state that the ALJ *may* obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ *must* do so in every case. *See* 20 C.F.R. § 404.1519.

The caselaw Plaintiff cites in support of his assertion does not state in so many words that an ALJ "cannot interpret the notations of doctors unguided," nor would those cases be controlling if they did. As to controlling caselaw Plaintiff does cite, it is readily distinguishable as apparent from the explanatory parenthetical Plaintiff provides. *See* MSJ at 16, *citing Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1996) (the ALJ was not qualified as a medical expert and therefore could not permissibly *go outside the record to consult medical textbooks* for purpose of making his own assessment of the claimant's physical condition) (emphasis added). Importantly, there is no contention here that the ALJ consulted medical textbooks or otherwise went outside the record.

Specifically, as to interpreting "raw medical data," the *Vasquez* case explained:

> The ALJ attempts to address this concern by noting that Plaintiff had a subsequent CT scan of his head which revealed no acute abnormalities that would explain the self-reported memory loss. However, no psychologist or medical doctor had come to this conclusion. Instead, *the ALJ interpreted the CT scan and came to a medical conclusion regarding its meaning*. An ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert.

*Vasquez v. Berryhill*, No. 1:16-CV-00448-GSA, 2017 WL 2633413, at *6 (E.D. Cal. June 19, 2017) (emphasis added). Here, by contrast, there is no contention that the ALJ attempted to interpret medical imaging.

Here, Plaintiff does not attempt to identify with any degree of specificity what evidence he contends constituted "raw medical data". Further, it is apparent from the Plaintiff's own summary of the pertinent medical evidence, as well as that provided by the ALJ, that there were no records to review concerning Plaintiff's knees during the relevant period between the application date of December 15, 2014, through his date last insured of June 30, 2015 – which is what Plaintiff contends created the ambiguity giving rise to the ALJ's duty to develop the record. In other words, the ALJ could not have committed error by independently reviewing "raw medical data" if there was no medical data to review. And, to the extent Plaintiff may be referring to later dated medical evidence from a date after the date last insured as the "raw medical data" in question, that evidence was not highly technical as it concerned a common orthopedic condition, osteoarthritis of the knees,[2] and uncomplicated examination observations such as edema, tenderness, gait stability and range of motion.

For example, despite complaining of the need to consistently elevate his legs to relieve swelling, and knee pain so severe he required a cane to walk, the ALJ noted that upon examination there was was no evidence of edema, no tenderness, no reference to the need for an assistive device,

---

[2] The ALJ discussed other conditions as well, such as hearing loss, but the only physical impairments referenced in Plaintiff's argument section is Plaintiff's knee impairment and leg edema.

and no complaints of gait instability. AR 35–36. These findings, and their logical connection to functional capacities such as standing and walking, can be readily understood by a layperson. Plaintiff's cited caselaw does not suggest otherwise.

### b. The ALJ's RFC was Supported by Substantial Evidence

The ALJ's relevant discussion[3] of the medical evidence was sufficiently concise, and the inferences sufficiently self-evident, that the discussion can be quoted in full:

> Treatment notes indicate the claimant had arthroscopic surgery to an unspecified knee or knees in 2010 (5F/9). He was eventually able to discontinue hydrocodone pain medicine, which suggests that his symptoms largely subsided after the arthroscopy (5F/11).
> . . .
> As of February 2015, a few months prior to the date last insured, the claimant told his physician that he was "doing awesome" and was planning a couple of weeks of international travel without any mention of bothersome knee pain or other health problems (5F/43).
> Later evidence about these impairments does not warrant a retroactive finding of disability. In February of 2016, approximately 8 months after the date last insured, the claimant reported worsening knee pain and grinding sensations. His body mass index had increased to 42.33 but an examination found no objective signs of serious osteoarthritis including no joint tenderness, no deformity, no swelling, or no pedal edema (5F/60-63).
> In August of 2016, the claimant returned from a fishing expedition to Alaska and complained of a new pain in his right elbow without reporting significant changes to his knee pain, demonstrating he was still capable of a high level of physical activity more than a year after his insured status expired (5F/85-86).
> The treatment remained conservative in nature, as he had injections to both knees and his physicians recommended against the need for additional surgery (5F/101). The subjective complaints, examination findings, and limited treatment regimen did not substantially escalate until 2019, and the subsequent knee joint replacement procedures of 2020 were fully five years removed from the date last insured (2F; 4F; 6F through 8F).

AR 34–36.

Thus, the ALJ's reasoning in support of the RFC, and for rejecting Plaintiff's related testimony, consisted of: 1- following his 2010 arthroscopic surgery he discontinued hydrocodone

---

[3] This discussion was limited to the knee impairment and leg edema as these are the only physical conditions referenced in Plaintiff's argument. Not referenced were hearing loss, hypertension, hyperlipidemia, or GERD.

suggesting his symptoms largely subsided by then (AR 556); 2- in February 2015 he was "doing awesome" and planning a trip with no mention of knee pain (AR 588); 3- a February 2016 examination was negative for joint tenderness, swelling, deformity, or pedal edema despite complaints of worsening knee pain with grinding sensations (AR 607); 4- in August 2016 he returned from an Alaskan fishing expedition with elbow pain but no changes to knee pain (AR 630–31) suggesting reasonably high functioning more than 1 year after expiration of his insured status; 5- treatment remained conservative thereafter consisting of injections but no surgical recommendation (AR 646); and 6- complaints, examination findings and treatment regimen did not escalate until 2019 and culminated in knee joint replacement surgeries in 2020, fully 5 years after the date last insured.[4]

A review of the cited records confirm they do support the ALJ's assertions and belies Plaintiff's argument that this was simply was an impermissible attempt by the ALJ to play doctor rather than order a consultative examination.

Plaintiff further contends that the ALJ's discussion did not provide any effort to build a "logical bridge" between the medical evidence from the relevant period and the resulting RFC. MSJ at 15. To the contrary, in explaining that Plaintiff discontinued hydrocodone after his 2010 arthroscopy the ALJ explained that this "suggests that his symptoms largely subsided after the arthroscopy." AR 35. In pointing out that Plaintiff went on an Alaskan fishing expedition, complained of elbow pain upon his return, but no exacerbation of his knee pain, the ALJ found that this "demonstrate[ed] he was still capable of a high level of physical activity more than a year after

---

[4] In support, the ALJ offered no pin citation, but rather cited exhibits "2F, 4F, 6F through 8F," which is a rather generalized effort to substantiate the assertion that his complaints, examination findings and treatment did not escalate from 2016 to 2019. However, despite the lack of pin citations by the ALJ, Plaintiff does not acknowledge or dispute the accuracy of the ALJ's assertion or offer any counterexamples. Further, a review of Plaintiff's own summary of the medical evidence appears to comport with the ALJs description thereof. Plaintiff describes no records related to his knee impairment from 2014 to 2015. MSJ at 5. Plaintiff describes a February 2016 exam noting pain level 3-4 out of 10 with moderate grinding. *Id.* Plaintiff describes an August 2016 knee injection. *Id.* Plaintiff's factual summary then skips forward to a June 2019 examination for atrial fibrillation. *Id.*

his insured status expired." AR 36.  Finally, after citing and describing the medical evidence, the ALJ specifically tied it to the testimony she found to be unsupported, namely Plaintiff's testimony concerning leg edema requiring elevation, a procedure whereby he allegedly had fluid drained from his legs, and his alleged need for a wheelchair or assistive device to walk:

> The claimant's testimony that he was required to elevate his legs is simply not supported by the medical evidence. During the relevant period, there is no indication that the claimant experienced lower extremity edema or swelling or that any health professional recommended that he elevate his legs. The claimant's testimony that during the relevant period a doctor recommended that he use a cane is not supported by the medical evidence. The claimant's testimony that during the relevant period is wife needed to push him in a wheelchair is not supported by the medical evidence.
> The foregoing evidence amply demonstrates that the claimant's combination of knee conditions and obesity were not disabling during the period at issue and fails to show why the claimant could not have done medium exertion work prior to the date last insured. However, the residual functional capacity is further limited within the medium exertion framework to frequent postural movements, climbing activities, and operation of foot controls with the lower extremities based on consideration of the probable aggravating effects of the claimant's obesity and activities that involvement movement of the knees (SSR 19-2p) (5F/61).
> The pre-hearing statements and testimonial claims are inconsistent when compared with medical evidence from the relevant period, further mitigating against a more restrictive residual functional capacity assessment. The claimant testified that he needed to elevate his legs due to swelling and was using a physician recommended cane in 2015, yet his examinations were negative for pedal edema and made no reference to an assistive device or elevating the legs (Hearing Testimony; 5F/19, 60-63, 85-86). He testified that a physician removed fluid from his legs, which again has no medical support during the relevant period (Hearing Testimony; 5F/19, 60-63, 85-86). He testified that he had difficulty walking and used a wheelchair during a travel trip, while medical evidence showed the claimant was involved in travel during 2015 and 2016, there was no mention of any instability, balance, coordination, or ambulation problems (Hearing Testimony; 5F/19, 60-63, 85-86). His prehearing statement, an "Exertion Questionnaire" form prepared in December 2019, appeared to describe his present condition at that time rather than his functional status as it was in 2014 and 2015 (see 3E). These discrepancies make it clear that the claimant's physical functioning in 2014 and 2015 was better than alleged and would have enabled him to perform a reduced range of medium work prior to the date last insured.

In sum, the ALJ explained the analytical significance of the facts described and refuted each of Plaintiff's contentions with citations to the record.  This was more than a sufficient effort to bridge the analytical gap between the medical findings and the ALJ's conclusions.

## c. The State Agency Doctor's Findings did not Establish Ambiguity; a Consultative Examination Was Neither Necessary Nor Useful

At the initial level of review, the state agency medical consultant, Dr. Wong, explained that there was "IE [inadequate evidence] for physical disability evaluation due to no available MER [medical evidence of record] to review in the relevant time frame." AR 77. Dr. Gitlin affirmed this finding on reconsideration. AR 85.

Plaintiff contends this establishes the inadequacy of the record triggering the ALJ's duty to develop the record with either medical testimony or a consultative examination. MSJ at 14. However, Plaintiff provides no authority for this contention. Despite the relative lack of evidence during the period under review, December 2014 through June 2015, as explained above the ALJ nevertheless reasoned that Plaintiff retained the RFC for a reduced range of medium work given: 1- he went off hydrocodone following his 2010 arthroscopy, suggesting the procedure provided relief; 2- he reported doing "awesome" as of February 2015 with plans to travel internationally and no mention of knee pain; and 3- despite complaining of worsening knee pain with moderate grinding in February 2016, he nevertheless went on an Alaskan fishing expedition in August 2016 "demonstrating he was still capable of a high level of physical activity more than a year after his insured status expired." AR 34–36. This explanation substantially supported the RFC for the period under review.

Even assuming Plaintiff is correct that the record was incomplete for the period under review, the incompleteness was an issue of his own making and the requested remedies— additional medical expert review or a consultative examination—would have no evidentiary value for reasons explained below.

Plaintiff extensively quotes Ninth Circuit dicta explaining that even for represented claimants, ALJs must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Garcia*, 768 F.3d at 930. However, the ALJ could not probe into, inquire of, or

footer: 12

explore medical evidence that did not exist. As Plaintiff's "comprehensive" factual summary reveals, during the 5 years between his alleged onset date of December 15, 2014 and his application date of November 8, 2019, he had exactly two knee-related visits: 1- a February 2, 2016 examination for knee pain rated 3-4 out of 10[5] (MSJ at 5, citing AR 608); and 2- an August 22, 2016 visit for bilateral knee injections (*Id.*, citing AR 646). Thereafter Plaintiff: 1- followed up with a November 8, 2019 visit for bilateral knee pain, which was the same day he applied for benefits (*Id.* at AR 351)); 2- underwent a CT scan the following month which revealed severe tricompartmental osteoarthritis; 3- was referred to orthopedic surgery; and 4- ultimately underwent total knee replacement in 2020.

To the extent there was any lingering uncertainty about the state of his knees during the relevant period 4-5 years prior to his application date,[6] there was little if anything the agency could have done to resolve that uncertainty. Rather, Plaintiff had his own duty, incentive, and opportunity to pursue treatment for his allegedly disabling impairments and to produce evidence in support of his own disability claim. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability.") (citation omitted); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

Plaintiff asserts that the ALJ should have obtained either "medical expert testimony or a consultative examination." But the agency had already retained two medical experts to review the medical file at the initial and reconsideration level and it's not clear what new considerations a third medical expert could have testified about given that Plaintiff did not pursue treatment during the

---

[5] Knee pain rated 3-4 out of 10, addressed with 1 set of injections after he returned from an Alaskan fishing expedition, does not have a disabling connotation.

[6] Which, as noted above, was sufficiently refuted by the ALJ's explanation concerning Plaintiff's statements to his treating providers about how he was feeling, his fishing expedition, and the sheer lack of follow up care for his knee pain or mention of the same to his providers.

period under review.

As for a consultative examination, it again bears mentioning that Plaintiff did not file his application for benefits until November 8, 2019, nearly 5 years after the alleged disability onset date of December 15, 2014, and more than 4 years after the expiration of his insured status. Although there is nothing in the regulations prohibiting such a delayed filing, it nevertheless presents practical obstacles to a claimant's ability to pursue certain theories of relief on appeal, such as Plaintiff's theory here that the ALJ ought to have ordered a consultative examination. Had the ALJ ordered a consultative examination on or around the ALJ hearing date of July 2022, which was ostensibly the first time the ALJ would have had an occasion to consider the issue, that would not have produced an accurate representation of Plaintiff's disability status during the period under review which was more than 7 years earlier — December 2014 to June 2015.

Even had the agency ordered such an examination contemporaneous with the initial or reconsideration determinations in early 2020, that would still post-date the relevant period by nearly 5 years, which again would not be an accurate approximation of Plaintiff's disability status during the relevant period.

In sum, the only evidence which could speak to Plaintiff's disability status for the period under review, with any reasonable degree of certainty, were the records the ALJ reviewed and analyzed as discussed above and which required no medical expertise to understand or interpret.

**VI.     Recommendations**

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is as follows:

1.     That Plaintiff's motion for summary judgment (Doc. 13) be **DENIED.**

2.     That Defendant's cross-motion (Doc. 18) be **GRANTED.**

3.     That the decision of the Commissioner of Social Security be **AFFIRMED**.

   4. That the Court Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Gary Scott Brown.

### VII. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 2, 2024**      **/s/ Gary S. Austin**
                 UNITED STATES MAGISTRATE JUDGE